[Cite as *Anderson v. Massillon*, 193 Ohio App.3d 297, 2011-Ohio-1328.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| ANDERSON, Adm., | JUDGES: |
| | Hon. W. Scott Gwin, P. J. |
| Appellant, | Hon. William B. Hoffman, J. |
| | Hon. John W. Wise, J. |
| v. | |
| CITY OF MASSILLON et al., | Case No. 2010 CA 00196 |
| Appellees. | |


O P I N I O N


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Civil Appeal from the Court of Common Pleas, Case No. 2009 CV 03641 |
| JUDGMENT: | Reversed and Remanded |
| DATE OF JUDGMENT ENTRY: | March 21, 2011 |

APPEARANCES:

Tzangas, Plakas, Mannos & Raies, Ltd., and Lee E. Plakas; and Davis & Young and David G. Utley, for appellant.

Wiley & Matthews, Gregory A. Beck, and Mel L. Lute Jr., for appellees.


WISE, Judge.

{¶1} Appellant Cynthia Anderson, administrator of the estates of Ronald E. Anderson and Javarre J. Tate, appeals the trial court's July 15, 2010 judgment entry granting appellees' motion for summary judgment.

**{¶2}** Appellees are the city of Massillon, Susan Toles, and Rick Annen.

## STATEMENT OF THE FACTS AND CASE

**{¶3}** This case concerns Ohio's statute on sovereign immunity for municipalities and their employees—specifically, whether a municipality and a member of the city's fire department have immunity when the employee causes an accident when responding to an emergency.

**{¶4}** On the morning of May 6, 2008, an accident occurred at the intersection of Johnson Street and Walnut Street, when the vehicle being operated by Ronald Anderson collided with Massillon City Fire Aerial Ladder Truck 211, resulting in the deaths of Ronald Anderson and his grandson Javarre Tate.

**{¶5}** On that morning, the following events transpired:

**{¶6}** At 8:30:32 a.m., Massillon resident Tammy Lockey called 9-1-1 to report a car fire she observed out her window. The call was received by the RED Center, the central dispatch for Massillon and other political subdivisions. Dispatcher Lynne Martin Joiner received the call. Joiner routed the call to Thomas Thornberry, the fire dispatcher, and he consulted his computer to dispatch the first available fire engine in Massillon. Thornberry, a 26-year veteran dispatcher, inquired of Joiner whether the fire was near a house.

**{¶7}** At 8:31:40, a tone was sounded in Station 1 of the Massillon Fire Department for Engine 214 to respond to the car fire. Pursuant to department policy, a single fire engine, such as Engine 214, and a separate truck would respond to car fires. However, also pursuant to policy, the dispatcher is required to inquire whether the car fire is near a building or structure in order to determine which vehicles to dispatch.

Based on this policy, dispatcher Joiner called 9-1-1 caller Tammy Lockey back and inquired as to whether the fire was near a house. Joiner interpreted the information she received as indicating that the car fire was near a house, and she relayed this information to Thornberry. Based on this new information, Thornberry then toned Station 1 at 8:33:03 and dispatched the second engine, Engine 211, a 75-foot aerial ladder truck.

{¶8} At 8:33:43 engine 214 left Station 1, operated by Firefighter Greenwood, commanded by Captain Smith. Engine 214 proceeded down Erie Street to Walnut Street toward the dispatched location.

{¶9} At 8:34:25, Ladder Truck 211, operated by Firefighter Susan Toles and commanded by Captain Rich Annen, left Station 1 and began to follow the same route as Engine 214 toward the fire.

{¶10} A school bus yielded to Engine 214 at Third Street, then traveled down Walnut and through the subject intersection before Ladder Truck 211 appeared. The bus then pulled over east of the intersection as Ladder Truck 211 approached.

{¶11} At the same time that Ladder Truck 211 was travelling east on Walnut Street, SE, Ronald Anderson was travelling north on Johnson Street, SE, in Massillon, with his grandson Javarre Tate as a passenger in his vehicle.

{¶12} Walnut Street is a two-lane road in a residential area. The intersection of Walnut and Johnson is a three-way stop, with a red flashing light for all traffic. A large tree was located on the corner of Walnut and Johnson Streets. Appellant claims that this tree, along with a utility pole, a fence, bushes, and a house close to the street, obstructed a clear view of the intersection.

**{¶13}** The posted speed limit in this area is 25 miles per hour.

**{¶14}** Toles stated that she exceeded the speed limit, but described the emergency run as a "normal call, a normal run."

**{¶15}** As Ladder Truck 211 proceeded to the fire, the lights, the wail siren, and the air horn were engaged. Additionally, Annen, who was seated in the passenger seat next to Toles, sounded the air horn at intersections.

**{¶16}** Toles stated that she could clearly see the intersection of Johnson and Walnut Streets as she approached. Annen stated that although there is a tree at that intersection, one can see through the branches to the intersection.

**{¶17}** Toles recalled that when she saw the school bus pulled over on Walnut Street in her lane of travel east of the intersection, she slowed down to make sure there were no children on the street and that the school-bus stop sign was not out. Toles stated that after she determined that the school bus was yielding, she moved left of center because of the presence of a parked car and the bus. Toles stated that she scanned the entire intersection to make sure the intersection was clear and determined that there was no one in the intersection.

**{¶18}** According to Toles, as she approached the intersection, she saw the Anderson van "shoot out in front" of Ladder Truck 211. She stated that she began to move "immediate[ly] left even more, to try to avoid his vehicle and get around." Just prior to the moment that she saw the van pull out in front of Ladder Truck 211, Toles stated that she heard Annen say, "He's not stopping." Toles recalled seeing the Anderson van go "completely through the stop sign right in front" of Ladder Truck 211. Toles stated that she never saw the Anderson vehicle stopped at the stop sign. Ladder

Truck 211 collided with Anderson's vehicle, resulting in the deaths of both Ronald Anderson and Javarre Tate.

{¶19} Eyewitnesses stated that appellees did not slow down or stop before proceeding through intersection.

{¶20} Appellant Cynthia Anderson, the administrator of the estates of her husband, Ronald E. Anderson, and her grandson, Javarre Tate, filed a wrongful-death action, asserting claims against appellees Susan Toles, Richard Annen, and the city of Massillon.

{¶21} On May 19, 2010, appellant filed a motion for partial summary judgment on the issue of liability.

{¶22} On May 19, 2010, appellees also filed a motion for summary judgment asserting the affirmative defense of sovereign immunity.

{¶23} On July 15, 2010, following the filing of response and reply briefs by the parties, the trial court granted appellees' motion for summary judgment and denied appellant's motion for partial summary judgment.

{¶24} Appellant now appeals to this court, assigning the following error for review:

## ASSIGNMENT OF ERROR

{¶25} "I. The trial court erred as a matter of law in granting summary judgment to defendants/appellees."

## SUMMARY JUDGMENT

{¶26} Summary-judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court.

*Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 506 N.E.2d 212. Therefore, we must refer to Civ.R. 56, which provides: "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

{¶27} Pursuant to the above rule, a trial court may not enter summary judgment if it appears that a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the nonmoving party has no evidence to prove its case. The moving party must specifically point to some evidence that demonstrates that the nonmoving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the nonmoving party to set forth specific facts demonstrating that there is a genuine issue of material fact for trial. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164, citing *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264.

**{¶28}** It is based upon this standard that we review appellant's assignments of error.

**{¶29}** In her sole assignment of error, appellant argues that the trial court erred in finding that appellee was immune from liability under R.C. 2744.01 et seq. We agree.

**{¶30}** The Supreme Court of Ohio has held:

**{¶31}** "Determining whether a political subdivision is immune from tort liability pursuant to R.C. Chapter 2744 involves a three-tiered analysis. *Greene Cty. Agricultural Soc. v. Liming* (2000), 89 Ohio St.3d 551, 556-557, 733 N.E.2d 1141. The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function. Id. at 556-557, 733 N.E.2d 1141 * * *; R.C. 2744.02(A)(1). However, that immunity is not absolute. R.C. 2744.02(B); *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 28. * * *.

**{¶32}** "The second tier of the analysis requires a court to determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability. Id. at 28. At this tier, the court may also need to determine whether specific defenses to liability for negligent operation of a motor vehicle listed in R.C. 2744.02(B)(1)(a) through (c) apply.

**{¶33}** "If any of the exceptions to immunity in R.C. 2744.02(B) do apply and no defense in that section protects the political subdivision from liability, then the third tier of the analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability." *Colbert v. Cleveland,* 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, at ¶ 7-9.

**{¶34}** The three-tiered analysis of liability applicable to a political subdivision as set forth above does not apply when determining whether an employee of the political subdivision will be liable for harm caused to an individual. *Cramer v. Auglaize Acres,* 113 Ohio St.3d 266, 2007-Ohio-1946, 865 N.E.2d 9, at ¶ 17.

**{¶35}** Pursuant to R.C. 2744.03(A)(6), an employee of a political subdivision is immune from liability unless:

**{¶36}** "(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

**{¶37}** "(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner * * *."

**{¶38}** Appellees herein claim that they are entitled to immunity pursuant to R.C. 2744.02, which provides:

**{¶39}** "(B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:

**{¶40}** "(1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority. The following are full defenses to that liability:

**{¶41}** " * * *

**{¶42}** "(b) A member of a municipal corporation fire department or any other firefighting agency was operating a motor vehicle while engaged in duty at a fire, proceeding toward a place where a fire is in progress or is believed to be in progress, or answering any other emergency alarm and the operation of the vehicle did not constitute willful or wanton misconduct * * *."

**{¶43}** Here, since the deaths of Ronald Anderson and Javarre Tate were caused by a municipal employee who is a member of a municipal fire department and who was proceeding toward a place where a fire was in progress, the question to be answered is whether the record establishes an issue of fact concerning whether Toles and/or Annen's actions constitute reckless, willful, and/or wanton misconduct.

**{¶44}** We therefore turn to the issue of what constitutes willful, wanton, and reckless conduct under R.C. 2744.

**{¶45}** "Wanton" conduct is the complete failure to exercise any care whatsoever. *Fabrey v. McDonald Village Police Dept.* (1994), 70 Ohio St.3d 351, 356, 639 N.E.2d 31. Mere negligence will not be construed as wanton misconduct in the absence of evidence establishing a disposition of perversity on the part of the tortfeasor; the actor must be aware that his conduct will probably result in injury. Id., quoting *Roszman v. Sammett* (1971), 26 Ohio St.2d 94, 97, 269 N.E.2d 420.

**{¶46}** The "wanton or reckless misconduct" standard set forth in R.C. 2744.03(A)(6) and "willful or wanton misconduct" standard set forth in R.C. 2744.02(B)(1)(a) are functionally equivalent. *Whitfield v. Dayton,* 167 Ohio App.3d 172, 2006-Ohio-2917, 854 N.E.2d 532, at ¶ 34.

**{¶47}** " '[W]illful misconduct' involves a more positive mental state prompting the injurious act than wanton misconduct, but the intention relates to the misconduct, not the result." Id. at ¶ 29. The *Whitfield* court defined "willful misconduct" as " 'an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposely doing some wrongful acts with knowledge or appreciation of the likelihood of resulting injury.' " Id. at ¶ 30, quoting *Tighe v. Diamond* (1948), 149 Ohio St. 520, 527, 37 O.O. 243, 80 N.E.2d 122. In *Gladon v. Greater Cleveland Regional Transit Auth.* (1996), 75 Ohio St.3d 312, 319, 662 N.E.2d 287, the Supreme Court defined the term "willful misconduct" as the "intent, purpose[,] or design to injure."

**{¶48}** The Supreme Court of Ohio has adopted the definition of reckless misconduct set forth in Restatement of the Law 2d, Torts (1965) 587, Section 500, which states that an actor's conduct is reckless if the following occurs: " '[R]eckless disregard of the safety of others if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.' " *Brockman v. Bell* (1992), 78 Ohio App.3d 508, 516, 605 N.E.2d 445.

**{¶49}** In *Marchetti v. Kalish* (1990), 53 Ohio St.3d 95, 100, 559 N.E.2d 699, the Supreme Court of Ohio again quoted the Restatement, contrasting intentional misconduct and recklessness and negligence and recklessness:

**{¶50}** "*f. Intentional misconduct and recklessness contrasted.* Reckless misconduct differs from intentional wrongdoing in a very important particular. While an act to be reckless must be intended by the actor, the actor does not intend to cause the harm which results from it. It is enough that he realizes or, from facts which he knows, should realize that there is a strong probability that harm may result, even though he hopes or even expects that his conduct will prove harmless. However, a strong probability is a different thing from the substantial certainty without which he cannot be said to intend the harm in which his act results.

**{¶51}** "g. *Negligence and recklessness contrasted.* Reckless misconduct differs from negligence in several important particulars. It differs from that form of negligence which consists in mere inadvertence, incompetence, unskillfulness, or a failure to take precautions to enable the actor adequately to cope with a possible or probable future emergency, in that reckless misconduct requires a conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man. It differs not only from the above-mentioned form of negligence, but also from that negligence which consists in intentionally doing an act with knowledge that it contains a risk of harm to others, in that the actor to be reckless must recognize that his conduct involves a risk substantially greater in amount than that which is necessary to make his conduct negligent. The difference between reckless misconduct and conduct involving only such a quantum of risk as is necessary to make it negligent is a difference in the degree of the risk, but this difference of degree is so marked as to amount substantially to a difference in kind."

{¶52} In *O'Toole v. Denihan,* 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, ¶ 73, the Supreme Court noted that in the context of R.C. 2744.03(A)(6)(b), recklessness is a perverse disregard of a known risk. The Supreme Court reminded us not to use 20-20 hindsight in viewing a situation and not to color our decision with a consideration of any tragic results. Id. at ¶ 76. Our analysis must center upon the information and circumstances the actor had before him at the time he chose to act.

{¶53} *O'Toole* held that even violations of agency policy do not rise to the level of recklessness unless the circumstances demonstrate a perverse disregard for the risks involved. Id. at ¶ 92.

{¶54} " 'Generally, issues regarding malice, bad faith, and wanton or reckless behavior are questions presented to the jury. *Fabrey,* [70 Ohio St.3d 351, 639 N.E.2d 31]. However, summary judgment is appropriate in instances where the alleged tortfeasor's actions show 'that he did not intend to cause any harm * * *, did not breach a known duty through an ulterior motive or ill will, [and] did not have a dishonest purpose * * *.' *Fox v. Daly* (Sept. 26, 1997), Trumbull App. No. 96-T-5453 [1997 WL 663670], (quoting *Hackathorn v. Preisse* (1995), 104 Ohio App.3d 768, 772, 663 N.E.2d 384).' *Henney* [*v. Shelby City School Dist.*, Richland App. No. 2005 CA 0064, 2006-Ohio-1382], at paragraphs 48-50." *Doe v. Jackson Local School Dist.,* Stark App. No. 2006CA00212, 2007-Ohio-3258 at ¶ 38; *Sisler v. Lancaster*, Fairfield App. No. 09-CA-47, 2010-Ohio-3039.

{¶55} Thus, when the facts presented show that reasonable minds could not conclude that the conduct at issue meets that high standard, a court may determine that the conduct is not willful, wanton, or reckless as a matter of law, and that determination

is made considering the totality of the circumstances. *Ybarra v. Vidra*, 6th Dist. No. WD-04-061, 2005-Ohio-2497, ¶ 10, citing *Reynolds v. Oakwood* (1987), 38 Ohio App.3d 125, 127, 528 N.E.2d 578.

**{¶56}** In the case at bar, the trial court analyzed the totality of the circumstances and found that there was "no evidence provided which demonstrates any willful or wanton misconduct by the [appellees] on May 6, 2008, including, but not limited to the operation of Engine 211."

**{¶57}** Appellant argues that reasonable minds could find that under the totality of the circumstances, appellees' conduct was reckless, willful, and/or wanton. Appellant lists the following factors in support of whether appellees' conduct was willful, wanton, or reckless:

**{¶58}** (1) The failure of appellees to stop or slow at the stop sign, (2) The speed appellees were traveling, which was in excess of 50 m.p.h. in a 25 m.p.h. zone, (3) Any obstructions near the intersection which affected visibility, (4) The fact that appellees were traveling left of center, (5) Appellee's failure to apply the brakes prior to impact with Anderson's vehicle, (6) The fact that the aerial ladder truck appellee was driving was the second vehicle dispatched to a minor vehicle fire, (7) Whether appellee's speed caused the audible siren to be ineffective, (8) Whether the siren of the ladder truck was masked by the siren from the first emergency vehicle, (9) Whether Appellee violated certain Massillon ordinances and/or Massillon Fire Department policies.

**{¶59}** Initially, we will address appellant's argument that three independent witnesses opined that the appellees' conduct in this case was "reckless." However, upon review, we find that no definition of "reckless" or "recklessness" as it applies to

statutory-immunity cases pursuant to R.C. 2744.03 was provided to these witnesses prior to asking them to make such a legal determination. Thus, we do not find these opinions to be dispositive.

{¶60} Therefore, our review turns to whether reasonable minds could conclude that appellees' conduct rose to the level of willful, wanton, or reckless misconduct.

### *Analysis: Totality of the Circumstances*

{¶61} The facts in the case sub judice are that at approximately 8:30 a.m. on May 6, 2008, firefighter Toles was traveling at approximately 52 m.p.h. down Walnut Street while operating Ladder Truck 211, did not stop as she crossed through the intersection with Johnson Street, and struck the vehicle in which Ronald Anderson and Javarre Tate were traveling.

{¶62} Initially, we note that because appellees were responding to an emergency call, Toles was authorized by R.C. 4511.03 to proceed through the stop sign under the following conditions:

{¶63} "The driver of any emergency vehicle or public safety vehicle, when responding to an emergency call, upon approaching a red or stop signal or any stop sign shall slow down as necessary for safety to traffic, but may proceed cautiously past such red or stop sign or signal with due regard for the safety of all persons using the street or highway." (Massillon Ordinance 331 mirrors this language.)

{¶64} In this case, appellant claims that appellees violated the above statute in addition to a number of Massillon Fire Department policies (307.01, 307.03(D) and 307.04(C)) and City of Massillon Ordinances (331.20(a) and 303.041).

**{¶65}** Ordinance 303.041, which is modeled after R.C. 4511.45, addresses when an emergency vehicle may travel left of center and provides that operators must exercise "due regard" for all other persons on the roadway.

**{¶66}** In this case, we do not find that the fact that appellees were left of center contributed to the accident. This is not a situation in which the accident was a head-on collision when the emergency vehicle was in the lane of travel of oncoming traffic, resulting in a collision.

**{¶67}** As to the Massillon Fire Department ("MFD") policies:

**{¶68}** MFD 307.01 provides that "if another vehicle fails to yield the right of way to an emergency vehicle, the emergency vehicle operator cannot force the right of way."

**{¶69}** MFD Policy 307.03(D) provides that "[d]uring emergency response, the driver shall bring the vehicle to a complete stop for any of the following * * * blind intersections, when the driver cannot account for all lanes of traffic in an intersection, when other intersection hazards are present * * *."

**{¶70}** MFD 307.04(C) and (D) apply to Capt. Annen's duties as the officer on board the aerial ladder truck and provide that "the Officer must issue warnings about road conditions and physical hazards to the driver when necessary" and "shall assist the driver with intersection crossing, locating the scene, backing and any other necessary safety practice."

**{¶71}** As stated above, it has been held that violations of internal departmental polices are not determinative as to the issue of whether the conduct herein constituted reckless behavior unless the circumstances demonstrate a perverse disregard for the risks involved. *O'Toole*,118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505.

{¶72} In this case, appellant claims that a large tree, a utility pole, a fence, and bushes at or near the intersection created obstructions that required Toles to bring the vehicle to a complete stop, arguing that she could not "account for all lanes of traffic in an intersection" and that "other intersection hazards [were] present."

{¶73} Upon review, we find that at the summary-judgment stage, we must assume those facts in favor of appellant. Viewing the facts in this case in a light most favorable to appellant, specifically the high rate of speed at which appellee was traveling in conjunction with the claimed obstructions in the intersection that would interfere with a clear view of the whole intersection, we find that reasonable minds could find that appellees' actions in this case were reckless.

{¶74} This ruling should not be interpreted to mean that we find that the conduct herein was, in fact, reckless. Rather, we are holding that appellant should have an opportunity to present her case to a jury to make such a determination.

{¶75} We therefore conclude that the trial court erred in determining that the facts material to the case are not in genuine dispute, and for this reason, summary judgment was inappropriate.

{¶76} Therefore, we sustain appellant's sole assignment of error.

{¶77} For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is reversed, and the cause is remanded for further proceedings in accordance with the law and this opinion.

Judgment reversed

and cause remanded.

GWIN and HOFFMAN, JJ., concur.