[Cite as *Mashburn v. Dutcher*, 2012-Ohio-6283.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| JOHN B. MASHBURN, | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellant | : | Hon. W. Scott Gwin, J. |
| | : | Hon. John W. Wise, J. |
| -vs- | : | |
| | : | Case No. 12 CAE 010003 |
| JEFFREY D. DUTCHER, et al. | : | |
| | : | |
| | : | |
| Defendants-Appellees | : | O P I N I O N |


CHARACTER OF PROCEEDING:    Appeal from the Delaware County Court of Common Pleas, Case No. 09 CVC 030344


JUDGMENT:    AFFIRMED


DATE OF JUDGMENT ENTRY:    December 27, 2012


APPEARANCES:

For Appellant:

JAMES P. CONNORS
145 East Rich St., Suite 200
Columbus, OH 43215

For Appellee:

MARK H. GAMS
M. JASON FOUNDS
471 East Broad St., 19th Floor
Columbus, OH 43215-3872

W. CHARLES CURLEY
10 West Broad St., Suite 2400
Columbus, OH 43215-5445

*Delaney, J.*

{¶1} Plaintiff-appellant John B. Mashburn appeals from the December 9, 2011 judgment entry of the Delaware County Court of Common Pleas granting the motion for summary judgment filed by defendant-appellees Jeffrey D. Dutcher ("Dutcher") and the Elm Valley Joint Fire District ("Elm Valley").

## FACTS AND PROCEDURAL HISTORY

{¶2} Dutcher is a volunteer firefighter with Elm Valley. This case arose in the late afternoon of June 10, 2006, when Dutcher received two pages from Elm Valley while at his home. Dutcher immediately left his home in his personal vehicle, a Chevy Suburban, to respond to the fire station, traveling westbound on State Route 229.

{¶3} Meanwhile, decedent Gary Bruce ("Bruce") also traveled westbound on State Route 229 driving a Dodge Dakota pickup truck and hauling a boat trailer with a canoe on top. Bruce stopped to turn left into a self-storage facility, "229 Storage." Two vehicles behind Bruce slowed.

{¶4} Dutcher approached the three vehicles. Behind him, in a separate vehicle, was another firefighter, Keith Luce. Bruce turned left into the storage facility as Dutcher went left of center to pass the two vehicles immediately behind Bruce in a legal passing zone. Dutcher safely passed the first two vehicles, but struck Bruce's vehicle as Bruce turned left into the storage facility. The vehicles collided and went off the left side of the road. Dutcher's vehicle rolled over into a fence and Bruce's truck flipped onto its side. Bruce died two days later of injuries sustained in the collision.

{¶5} Appellant brought suit on behalf of decedent Bruce against appellees Dutcher and the Elm Valley Joint Fire District,[1] asserting three causes of action: (1) negligence/wrongful death; (2) negligence per se; and (3) survival action.

{¶6} Dutcher and Elm Valley filed a motion for summary judgment, arguing Dutcher was acting in the course and scope of his employment as an emergency responder, no evidence exists he acted recklessly or wantonly, and he is therefore entitled to sovereign immunity pursuant to R.C. 2744.03, and Elm Valley is thus entitled to assert sovereign immunity pursuant to R.C. 2744.02. Appellant responded, appellee replied, and both parties filed supplemental memoranda.

*The Civ.R. 56 evidence*

{¶7} Appellees offered the following evidence in support of their motion for summary judgment: Dutcher's affidavit, the deposition transcript of Keith Luce, the affidavit of Patti Lewis, which included the "Joint Resolution dated June 12, 2000 among the Village of Ashley and Peru, Westfield, and Oxford Townships to create a joint fire district;" the Constitution of Elm Valley Joint Fire District adopted August 14, 2000; and Dutcher's W-2 statements for the years 2005, 2006, and 2007. Appellees also offered report number 59-0884-59 of the Ohio State Highway Patrol, authenticated by affidavit of Ohio Department of Public Safety records technician Jeffrey L. Maute.

{¶8} Appellant offered the following evidence in opposition to appellees' motion for summary judgment: Dutcher's deposition transcript, Luce's deposition transcript, and the affidavit of James D. Stover. Appellant also included the following exhibits which were not sworn, certified, or authenticated pursuant to Civ.R. 56(E) but

---

[1] Defendant Village of Ashley was dismissed as a party and is not a party to this appeal.

were considered by the trial court absent objection by appellees:  the Elm Valley Joint Fire District Standard Operating Guidelines, Emergency Vehicle Driver Training Program Instructor's Guide, and Jeff Dutcher Application for Membership to Ashley Community Fire Co.

*The evidence of Dutcher's affidavit, deposition testimony, and statement to OSHP*

{¶9}  Dutcher's affidavit indicates he is a volunteer firefighter for Elm Valley whose duties include responding to fires and to calls for emergency medical care and treatment.  On June 10, 2006, he received two pages to respond to an emergency call involving an automobile accident.  His Chevy Suburban was equipped with lights and sirens and he activated the lights and siren upon responding to this call.

{¶10} The roadway where the collision occurred is a two-lane road with one lane of traffic for each direction, a posted speed limit of 55 m.p.h., and both lanes are separated by a broken yellow line.  The area of the collision is a legal passing zone. Dutcher was driving approximately 60 m.p.h.

{¶11} As he traveled west on State Route 229, three vehicles were ahead of him, with the third vehicle being Bruce's.  Upon Dutcher's approach, the two vehicles behind Bruce's vehicle moved to the side of the road.  Dutcher observed those vehicles slow down and pull to the side of the road, and he was in the midst of safely passing those vehicles when Bruce turned left to turn into the storage facility.   Bruce entered Dutcher's path as he turned left, and Dutcher immediately applied his brakes and attempted to avoid the collision.  Dutcher never saw Bruce's brake lights or turn signal activated.

*The deposition testimony of Keith J. Luce*

{¶12} Keith J. Luce ("Luce") was also employed by Elm Valley. While at a graduation party, he received a page on June 10, 2006 to respond to an automobile accident "with multiple ejections." As he left the party, he heard sirens and saw Dutcher's vehicle pass; he saw the lights of Dutcher's vehicle on and heard its siren. Luce followed Dutcher's vehicle and paced it traveling between 60 and 65 m.p.h. While driving on State Route 229, both Dutcher and Luce passed two vehicles which had slowed down and pulled to the right side of the roadway to permit Dutcher and Luce to pass. Luce observed three vehicles in front of Dutcher near the storage facility, observed the vehicles slow and pull to the side of the road, and observed Dutcher enter the left lane to pass the three vehicles. Luce did not see any brake lights or turn signals from Bruce's truck and trailer. He observed Bruce turn left in front of Dutcher, saw Dutcher's brake lights come on, and saw the impact of the two vehicles with Dutcher striking Bruce's vehicle directly on the driver's-side door.

*Affidavit of James D. Stover, witness at "229 Storage"*

{¶13} James D. Stover ("Stover") is the owner of the 229 Storage facility. On June 10, 2006 he was waiting to meet with a customer on the west side of the facility when he heard the sound of a siren, followed almost immediately by the sound of a collision. State Route 229 is on the north side of the business. He ran to the front of the storage facility and drove to the area of the accident. Stover was unable to definitively state whether the siren he heard emanated from the first responder (Dutcher) or the second responder (Luce), and he did not see the vehicles prior to the collision, nor did he see the collision take place.

*Relevant portions of Elm Valley's Standard Operating Guidelines and Department Policies for emergency responders*

{¶1} Appellant's evidentiary material included the Elm Valley Fire District Department Policies (Rev. 08/2002) contained within the Elm Valley Joint Fire District Standard Operating Guidelines, which state in pertinent part:

11.  Response in privately owned vehicles

When any member responds to the station or to the scene of an emergency in his/her private vehicle, each member must strictly adhere to all applicable motor vehicle laws.  Privately owned vehicles are not provided with the same exemptions that are provided to emergency vehicles.  No member of the organization will be permitted to violate any motor vehicle laws.  While it is recognized that timeliness in response to an emergency is important, it is imperative that all drivers understand that their private vehicles are not emergency vehicles and therefore are not afforded any exemptions or special privileges under state law.  * * * *.

Personal Vehicle—Lights and Sirens

* * * *.

A personal vehicle becomes a public safety vehicle when it is responding to an emergency call and has the following equipment installed and operating.  The personal vehicle must be equipped with an *** displaying at least one flashing light, rotating, or oscillating light visible under normal atmospheric conditions from a distance of five hundred feet to the front of the vehicle and the vehicle must be equipped with an audible siren. * * * *.

{¶2}   The Standard Operating Guidelines also provide in pertinent part:

2.  Warning devices and true emergencies

When responding to a "true emergency," all audible and visual warning devices will be operated at all times regardless of time of day and/or traffic conditions.  All emergency vehicle drivers must understand that warning devices are not always effective in making other vehicle operators aware of your presence.  Warning devices only <u>request the right-of-way</u>, they do not insure the right-of-way.

*The definition of a true emergency is a situation in which there is a high probability of death or serious injury to an individual or significant property loss, and actions by an emergency vehicle driver may reduce the seriousness of the situation.* (Emphasis in original.)

3.  Vehicle control and right-of-way

All drivers shall attempt to maintain control of the vehicle that they are operating in such a manner as to provide the maximum level of safety for both their passengers and the general public.  Emergency vehicle drivers should be aware that the civilian operators <u>may not</u> react in the manner in which is expected or felt to be appropriate.  An attempt should be made to have options available when passing or overtaking vehicles.  If another vehicle operator fails to yield the right of way to an emergency vehicle, the emergency vehicle cannot force the right of way, nor can you assume the right of way, therefore you do not have the right of way until the other vehicle yields to you.

* * * *.

4. Response speeds

When responding to a true emergency only, drivers shall operate the vehicle they are driving as close to the posted speed limit as possible, but not to exceed ten (10) miles per hour over the posted speed limit, conditions permitting. * * * *.

{¶3} Elm Valley's department policies note the following:

14) RESPONDING: UPON NOTIFICATION OF A RUN, ALL MEMBERS WILL REPORT TO THE FIRE STATION FIRST REGARDLESS OF THE NATURE OF THE CALL UNLESS THERE IS A JUSTIFIABLE REASON FOR NOT DOING SO.

15) ALL MEMBERS RESPONDING TO A CALL WILL REPORT TO THE FIRE STATION BEFORE GOING TO THE EMERGENCY SCENE UNLESS THE CALL IN (*sic*) ON YOUR NORMAL ROUTE TO THE FIRE STATION AND YOU DON'T ENDANGER YOURSELF BY PROVIDING IMMEDIATE AID AT THE SCENE.

{¶4} On December 9, 2011, the trial court granted appellees' motion for summary judgment, finding appellant failed to state any facts indicating that an exception to statutory sovereign immunity applies to appellees, and no evidence existed Dutcher operated his vehicle in a manner which was with a malicious purpose, in bad faith, or in a wanton or reckless manner.

{¶5} Appellant now appeals from the judgment entry of the trial court granting appellees' motion for summary judgment.

{¶6}   Appellant raises one Assignment of Error:

{¶7}   "I.    THE  TRIAL  COURT  ERRED  BY  GRANTING  SUMMARY JUDGMENT TO THE DEFENDANTS ON THE BASIS OF IMMUNITY UNDER R.C. 2744.02 AND 2744.03."

I.

{¶8}   Appellant argues the trial court erred in granting summary judgment for appellees because material issues of fact exist which should be weighed by a jury.

{¶9}   Summary judgment motions are to be resolved in light of the dictates of Civ.R. 56, which was reaffirmed by the Ohio Supreme Court in *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 448, 663 N.E.2d 639 (1996):

{¶10} Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made.  *State ex rel. Parsons v. Fleming*, 68 Ohio St.3d 509, 511, 628 N.E.2d 1377 (1994), citing *Temple v. Wean United, Inc.* 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

{¶11} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgment motions on the same standard and evidence as the trial court.  *Smiddy  v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 36, 56 N.E.2d 212 (1987).

{¶12} In the instant case, the trial court granted appellees' motion for summary judgment finding no evidence existed Dutcher operated his vehicle without lights or a siren, and no evidence existed he operated his vehicle in violation of Elm Valley's policies and guidelines or in violation of traffic laws.  Therefore, the trial court concluded, there was no evidence he operated his vehicle with a malicious purpose, in bad faith, or in a wanton or reckless manner.

*The Relevant Statutes*

{¶13} R.C. 2744.02 establishes governmental immunity for political subdivisions and their employees: " * * * [a] political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

{¶14} R.C. 2744.01(F) defines "political subdivision" as a municipal corporation * * * or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state, [including a] * * * * fire and ambulance district created pursuant to section 505.375 of the Revised Code."

{¶15} R.C. 505.375(A)(1)(a)  states, "The boards of township trustees of one or more townships and the legislative authorities of one or more municipal corporations, or the legislative authorities of two or more municipal corporations, or the boards of township trustees of two or more townships, may negotiate an agreement to form a fire and ambulance district for the delivery of both fire and ambulance services. The agreement shall be ratified by the adoption of a joint resolution by a majority of the members of each board of township trustees involved and a majority of the members

of the legislative authority of each municipal corporation involved. The joint resolution shall specify a date on which the fire and ambulance district shall come into being."

{¶16} Appellees fit squarely within Ohio's statutory sovereign immunity.  It is undisputed that Elm Valley was created according to R.C. 505.375 and is therefore a government fire department.  The provision or nonprovision of police, fire, emergency medical, ambulance, and rescue services or protection is specifically delineated as a governmental function pursuant to R.C. 2744.01(C)(2).

{¶17} Dutcher was employed by Elm Valley and his duties included responding to fires and calls for emergency medical care.  On June 10,2006, Dutcher received two pages to respond to an emergency call of an auto accident.  The collision between Dutcher's vehicle and Bruce's vehicle occurred during Dutcher's response to the pages.  R.C. 2744.01(B) defines "employee" as "an officer, agent, employee, or servant, whether or not compensated or full-time or part-time, who is authorized to act and is acting within the scope of the officer's, agent's, employee's, or servant's employment for a political subdivision."  Appellee Dutcher is an employee of appellee Elm Valley.

*Sovereign Immunity Analysis*

{¶18} The Ohio Supreme Court has held, "Determining whether a political subdivision is immune from tort liability pursuant to R.C. 2744 involves a three-tiered analysis.  *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 556-557, 733 N.E.2d 1141 (2000).  The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental or proprietary function.  Id. At 556-557; R.C. 2744.02(A)(1).  However, that immunity is not absolute.

R.C. 2744.02(B); *Cater v. Cleveland*, 83 Ohio St.3d 24, 28, 697 N.E.2d 610 (1998). "The second tier of the analysis requires a court to determine whether any of the five listed exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability." Id. At this tier, the court may also need to determine whether specific defenses to liability for negligent operation of a motor vehicle listed in R.C. 2744.02(B)(1)(a) through (c) apply.

{¶19} "If any of the exceptions to immunity in R.C. 2744.02(B) do apply and no defense in that section protects the political subdivision from liability, then the third tier of the analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability." *Colbert v. Cleveland*, 99 Ohio St.3d 210, 2003-Ohio-3319, 790 N.E.2d 781 at ¶¶ 7-9.

{¶20} The three-tiered analysis of liability applicable to a political subdivision as set forth above does not apply when determining whether an employee of the political subdivision will be liable for harm caused to an individual. *Cramer v. Auglaize Acres*, 113 Ohio St.3d 266, 2007-Ohio-1946, 865 N.E.2d 9, ¶ 17.

{¶21} Pursuant to R.C. 2744.03(A)(6), an employee of a political subdivision is immune from liability unless: (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner.

{¶22} Appellees assert liability is barred by Ohio's statutory sovereign immunity pursuant to R.C. 2744.02(A)(1) and R.C. 2744.02(B)(1)(c), which state in pertinent part:

(A)(1) For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

* * * *.

(B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:

(1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority. The following are full defenses to that liability:

(c) A member of an emergency medical service owned or operated by a political subdivision was operating a motor vehicle while responding to or completing a call for emergency medical care or treatment, the member was holding a valid commercial driver's license issued pursuant to Chapter 4506. or a driver's license issued pursuant to Chapter 4507. of

the Revised Code, the operation of the vehicle did not constitute willful or wanton misconduct, and the operation complies with the precautions of section 4511.03 of the Revised Code.

*Dutcher responded to an emergency call*

{¶23} The first issue we must address is appellant's assertion Dutcher was not on an "emergency call" because upon being paged, he was required to report to the fire station in his private vehicle and did not yet know if he would be required to report to the scene of a motor vehicle and in what capacity. We find Dutcher did respond to an "emergency call" as defined in R.C. 2744.01(A): "Emergency call" means a call to duty, including, but not limited to, communications from citizens, police dispatches, and personal observations by peace officers of inherently dangerous situations that demand an immediate response on the part of a peace officer." The Ohio Supreme Court has further defined the "call to duty" described in the statute, noting "duty" means "obligatory tasks, conduct, service, or functions enjoined by order or usage according to rank, occupation, or profession." *Colbert v. Cleveland*, 99 Ohio St.3d 215, 217, 790 N.E.2d 781 (2003), citing Webster's Third New International Dictionary (1986). The Court concluded a call to duty is a situation in which a response is required by the officer's professional obligation. Id.

{¶24} Dutcher was on the road solely because he was responding to the pages as his job duties with Elm Valley required him to do. We find no issue of fact exists as to whether Dutcher was responding to an emergency call.

*Dutcher did not act with malicious purpose, in bad faith, or in a wanton or reckless manner*

{¶25} The next issue we must address is whether Dutcher's conduct was "with malicious purpose, in bad faith, or in a wanton or reckless manner" so as to restore liability for Dutcher pursuant to R.C. 2744.03(A)(6), and whether Dutcher's conduct "constitute[d] willful or wanton misconduct" and failed to comply with the precautions of R.C. 4511.03 so as to restore liability for Elm Valley pursuant to R.C. 2744.02(B)(1)(c).

{¶26} We therefore turn to the issue of what constitutes willful, wanton, and reckless conduct under R.C. 2744.

{¶27} In *Brockman v. Bell*, 78 Ohio App.3d 508, 605 N.E.2d 445 (1992), the First District Court of Appeals observed that civil liability for negligence is predicated upon injury caused by the failure to discharge a duty recognized in law and owed to the injured party. The existence of a duty depends on the foreseeability of the injury. The test for foreseeability is whether a reasonably prudent person, under the same or similar circumstances, should have anticipated that injury to another was the probable result of his performance or nonperformance of an act. As the probability increases that certain consequences will flow from certain conduct, the actor's conduct acquires the character of intent and moves from negligence toward intentional wrongdoing. Thus, the court concluded, the terms "wanton," "willful" and "reckless," as used to describe tortious conduct, might best be defined at points on a continuum between negligence, which conveys the idea of inadvertence, and intentional misconduct.

{¶28} We observe that willful and wanton misconduct describe two distinct legal standards. *Gardner v. Ohio Valley Region Sports Car Club of Am.,* 10th Dist. No. 01 AP–1280, 2002–Ohio–3556 at ¶ 11.

{¶29} Essentially, wanton misconduct is the failure to exercise any care. *Hunter v. City of Columbus*, 139 Ohio App.3d 962, 968, 746 N.E.2d 246 (2000). Wanton misconduct has also been likened to conduct that manifests a "disposition to perversity." *Seymour v. New Bremen Speedway*, 31 Ohio App.3d 141, 148, 509 N.E.2d 90 (1971), quoting *Roszman v. Sammett*, 26 Ohio St.2d 94, 269 N.E.2d 420 (1971), paragraph two of the syllabus. "'[M]ere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor.' " *Fabrey v. McDonald Police Dept.*, 70 Ohio St.3d 351, 356, 639 N.E.2d 31 (1994), quoting *Roszman,* supra. See *Gardner v. Ohio Valley Region Sports Car Club of Am.,* 10th Dist. No. 01 AP–1280, 2002–Ohio–3556 at ¶ 13.

{¶30} Willful misconduct involves "an intent, purpose, or design to injure." *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 375, 696 N.E.2d 201 (1998), quoting *McKinney v. Hartz & Restle Realtors, Inc.*, 31 Ohio St.3d 244, 246, 510 N.E.2d 386 (1987). Willful misconduct is something more than negligence and it imports a more positive mental condition prompting an act than wanton misconduct. *Phillips v. Dayton Power & Light Co.*, 93 Ohio App.3d 111, 119, 637 N.E.2d 963 (1994), citing *Tighe v. Diamond*, 149 Ohio St. 520, 526–527, 80 N.E.2d 122 (1948).

{¶31} In *Marchant v. Gouge,* this Court observed that wanton misconduct goes beyond mere negligence and requires the evidence to establish a disposition to perversity on the part of the tortfeasor such that the actor must be conscious that his conduct will in all probability result in injury. The "wanton or reckless misconduct" standard set forth in R.C. 2744.03(A)(6) and "willful or wanton misconduct" standard set forth in R.C. 2744.02(B)(1)(a) are functionally equivalent. 187 Ohio App.3d 551,

932 N.E.2d 960, 2010–Ohio–2273 at ¶ 32. (Citations and internal quotation marks omitted).

{¶32} In *Marchant,* supra, we went on to observe that "willful misconduct" involves a more positive mental state prompting the injurious act than wanton misconduct, but the intention relates to the misconduct, not the result. We cited *Whitfield v. Dayton,* 167 Ohio App.3d 172, 2006–Ohio–2917, 854 N.E.2d 532 which defined "willful misconduct" as " 'an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposely doing some wrongful acts with knowledge or appreciation of the likelihood of resulting injury.' " *Id.* at ¶ 30, 854 N.E.2d 532, quoting *Tighe v. Diamond*, 149 Ohio St. 520, 527, 80 N.E.2d 122 (1948). In *Gladon v. Greater Cleveland Regional Transit Auth.*, 75 Ohio St.3d 312, 319, 662 N.E.2d 287 (1996), the Supreme Court defined the term "willful misconduct" as "the intent, purpose, or design to injure."

{¶33} The Supreme Court of Ohio has adopted the definition of reckless misconduct set forth in Restatement of the Law 2d, Torts (1965) 587, Section 500. *Marchetti v. Kalish*, 53 Ohio St.3d 95, 100, 559 N.E.2d 699 (1990) at n. 3. Comments *f* and *g* to Section 500 of the Restatement of Torts 2d, supra, at 590, provide a concise analysis, which differentiates between the three mental states of tortious conduct with which we are confronted. The court in *Marchetti* cited to these comments with approval. They provide as follows:

> *f. Intentional misconduct and recklessness contrasted.* Reckless misconduct differs from intentional wrongdoing in a very important particular. While an act to be reckless must be intended by the actor, the

actor does not intend to cause the harm which results from it. It is enough that he realizes or, from facts which he knows, should realize that there is a strong probability that harm may result, even though he hopes or even expects that his conduct will prove harmless. However, a strong probability is a different thing from the substantial certainty without which he cannot be said to intend the harm in which his act results.

*g. Negligence and recklessness contrasted.* Reckless misconduct differs from negligence in several important particulars. It differs from that form of negligence which consists in mere inadvertence, incompetence, unskillfulness, or a failure to take precautions to enable the actor adequately to cope with a possible or probable future emergency, in that reckless misconduct requires a conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man. It differs not only from the above-mentioned form of negligence, but also from that negligence which consists in intentionally doing an act with knowledge that it contains a risk of harm to others, in that the actor to be reckless must recognize that his conduct involves a risk substantially greater in amount than that which is necessary to make his conduct negligent. The difference between reckless misconduct and conduct involving only such a quantum of risk as is necessary to make it negligent is a difference in the degree of the risk, but this difference of degree is so marked as to amount substantially to a difference in kind.

See also *Marchant v. Gouge,* supra at ¶ 36.

*Dutcher's conduct was not reckless*

{¶34} Appellant asserts reasonable minds could draw different conclusions regarding whether Dutcher operated his personal vehicle recklessly. We disagree.

{¶35} The question of whether a person has acted recklessly is almost always a question for the jury. *Hunter v. Columbus* (2000), 139 Ohio App. 962, 746 N.E.2d 246, decided by the 10th District Court of Appeals. In *Hunter,* an emergency vehicle responding to an emergency call entered an intersection at 61 miles per hour in a 35 miles per hour zone. The court of appeals acknowledged the emergency vehicle operator's motives were humanitarian, but found nevertheless, he did not necessarily have immunity because the matter presented a genuine issue of fact to the jury. The *Hunter* case cited *Brockman v. Bell* (1992), 78 Ohio App.3d 508, 605 N.E.2d 445, arising out of the Eleventh District Court of Appeals, and *Ruth v. Jennings* (1999), 136 Ohio App.3d 370, 736 N.E.2d 917, arising out of the Twelfth District Court of Appeals. The *Bell* case involved a collision between an ambulance and a private vehicle, although *Ruth* concerned an excessive force to arrest situation. However, all three of the cases the Hunter court cited found resolution of the case was a matter for the jury.

{¶36} The Ohio Supreme Court has explained:

* * *[N]egligence is mere inadvertence, incompetence, lack of skill, or

failure to take precautions that would allow the person to cope with a

possible or probable future emergency. Reckless consists in intentionally

doing an act with knowledge that it contains a risk of harm to others, in

that the actor to be reckless must recognize that his conduct involves a

risk substantially greater in amount than that which is necessary to make his conduct negligent. The person does not intend to cause the harm that results from it but realizes or, from known facts, should realize that there is a strong probability that harm may result, even though the person hopes or even expects that the conduct will prove harmless. Intentional misconduct occurs when the person intends to cause harm.

*Marchetti v. Kalish,* 53 Ohio St.3d 95, 559 N.E.2d 699, footnote 3, citing Comments *f* and *g* to Section 500 of the Restatement of Torts 2d.

{¶37} The spectrum of intent stretches from negligence, through reckless, to intentional, and there are no bright lines. We agree with the *Bell* court that the line between willful and wanton misconduct and ordinary negligence can be a very fine one, *Bell* at 517, 605 N.E.2d 445, citing *Osler v. Lorain* (1986), 28 Ohio St.3d 345, 504 N.E.2d 19; *Hawkins v. Ivy* (1977), 50 Oho St.2d 144, 50 Ohio St.2d 114, 363 N.E.2d 367; *Tighe v. Diamond* (1948), 149 Ohio St. 520, 80 N.E.2d 1122; and *Reynolds v. City of Oakwood* (1987), 38 Ohio App.3d 125, 528 N.E.2d 578. The *Reynolds* case arose out of the Second District Court of Appeals and dealt with a collision between a police car utilizing the siren and lights and a pedestrian vehicle.

*Our recent decisions in Anderson and Burlingame*

{¶38} We are mindful in this case of our recent decisions in *Burlingame v. Estate of Burlingame*, 5th Dist. No. 2010-CA-00124, 2011-Ohio-1325, appeal allowed 129 Ohio St.3d 1449, 2011-Ohio-4217, 951 N.E.2d 1046, and rev'd by *Anderson v. Massillon*, Slip Opinion No. 2012-Ohio-5711 and *Anderson v. Massillon*, 193 Ohio App.3d 297, 2011-Ohio-1328, 951 N.E.2d 1063 (5th Dist.2011), appeal allowed 129

Ohio St.3d 1449, 2011-Ohio-4217, 951 N.E.2d 1046 and aff'd by *Anderson v. Massillon*, Slip Opinion No. 2012-Ohio-5711. In those cases, which also involve collisions triggered by emergency responders, we found factual issues of recklessness on the part of the emergency responders precluded summary judgment for the political subdivisions and employees.

{¶39} The Ohio Supreme Court recently clarified our position, holding that "[w]ilfull, wanton, and reckless describe different degrees of care and are not interchangeable." *Anderson v. Massillon*, Slip Opinion No. 2012-Ohio-5711, paragraph one of the syllabus. Most relevant to our analysis here, the Court reiterated that violation of a statute, ordinance, or departmental policy enacted for the safety of the public is not *per se* willful, wanton, or reckless conduct but may be relevant to determining the culpability of a course of conduct. Id., citations omitted, Slip Opinion No. 2012-Ohio-5711 at ¶ 37. Nevertheless, "without evidence of an accompanying knowledge that the violations will 'in all probability result in injury,' evidence that policies have been violated demonstrates negligence at best." Id., internal citations omitted. In the instant case, we find no evidence of a violation of a statute, ordinance, or departmental policy, much less willful or wanton misconduct that would overcome statutory sovereign immunity.

{¶40} We have noted time and again that these issues of sovereign immunity turn on their individual facts. That principle is at work in this case, in which we find reasonable minds could not come to different conclusions about Dutcher's operation of the vehicle. No evidence of wanton or willful misconduct exists regarding Dutcher's

operation of his vehicle.  Nor does any party allege Dutcher failed to exercise *any* care or had a positive mental condition bent upon causing harm.

{¶41} We have noted willful misconduct may be discerned from an intentional deviation from a clear duty or rule of conduct, but based upon the relevant portions of Elm Valley's standard operating guidelines and departmental policies, supra, and the relevant portions of Ohio's traffic code, no evidence exists of willful misconduct.

{¶42}  No evidence exists Dutcher violated any departmental policy or standard operating guideline, as described supra.  Similarly, no evidence exists Dutcher violated any applicable provision of the Ohio Revised Code.

{¶43} R.C. 4513.21 states in pertinent part:

Every emergency vehicle shall be equipped with a siren, whistle, or bell, capable of emitting sound audible under normal conditions from a distance of not less than five hundred feet and of a type approved by the director of public safety. Such equipment shall not be used except when such vehicle is operated in response to an emergency call or is in the immediate pursuit of an actual or suspected violator of the law, in which case the driver of the emergency vehicle shall sound such equipment when it is necessary to warn pedestrians and other drivers of the approach thereof.

{¶44} Regarding yielding the right-of-way to emergency vehicles, R.C. 4511.45 and 4511.452 state in pertinent part, respectively:

(A)(1) Upon the approach of a public safety vehicle or coroner's vehicle, equipped with at least one flashing, rotating or oscillating light visible

under normal atmospheric conditions from a distance of five hundred feet to the front of the vehicle and the driver is giving an audible signal by siren, exhaust whistle, or bell, no driver of any other vehicle shall fail to yield the right-of-way, immediately drive if practical to a position parallel to, and as close as possible to, the right edge or curb of the highway clear of any intersection, and stop and remain in that position until the public safety vehicle or coroner's vehicle has passed, except when otherwise directed by a police officer.

(2) Upon the approach of a public safety vehicle or coroner's vehicle, as stated in division (A)(1) of this section, no operator of any streetcar or trackless trolley shall fail to immediately stop the streetcar or trackless trolley clear of any intersection and keep it in that position until the public safety vehicle or coroner's vehicle has passed, except when otherwise directed by a police officer.

(B) This section does not relieve the driver of a public safety vehicle or coroner's vehicle from the duty to drive with due regard for the safety of all persons and property upon the highway.

(A) Upon the immediate approach of a public safety vehicle, as stated in section 4511.45 of the Revised Code, every pedestrian shall yield the right-of-way to the public safety vehicle.

(B) This section shall not relieve the driver of a public safety vehicle from the duty to exercise due care to avoid colliding with any pedestrian.

{¶45} Regarding lawful passing, R.C. 4511.29 and 4511.30 state in pertinent part, respectively:

(A) No vehicle or trackless trolley shall be driven to the left of the center of the roadway in overtaking and passing traffic proceeding in the same direction, unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made, without interfering with the safe operation of any traffic approaching from the opposite direction or any traffic overtaken. In every event the overtaking vehicle or trackless trolley must return to an authorized lane of travel as soon as practicable and in the event the passing movement involves the use of a lane authorized for traffic approaching from the opposite direction, before coming within two hundred feet of any approaching vehicle.

(A) No vehicle or trackless trolley shall be driven upon the left side of the roadway under the following conditions:

(1) When approaching the crest of a grade or upon a curve in the highway, where the operator's view is obstructed within such a distance as to create a hazard in the event traffic might approach from the opposite direction;

(2) When the view is obstructed upon approaching within one hundred feet of any bridge, viaduct, or tunnel;

(3) When approaching within one hundred feet of or traversing any intersection or railroad grade crossing.

{¶1}   R.C. 4511.041 states:

Sections 4511.12, 4511.13, 4511.131, 4511.132, 4511.14, 4511. 202, 4511.21, 4511.211, 4511.22, 4511.23, 4511.25, 4511.26, 4511.27, 4511.28, 4511.29, 4511.30, 4511.31, 4511.32, 4511.33, 4511.34, 4511.35, 4511. 36, 4511.37, 4511.38, 4511.39, 4511.40, 4511.41, 4511.42, 4511.43, 4511.431, 4511.432, 4511.44, 4511.441, 4511.57, 4511.58, 4511.59, 4511.60, 4511.61, 4511.62, 4511.66, 4511.68, 4511.681, and 4511.69 of the Revised Code do not apply to the driver of an emergency vehicle or public safety vehicle if the emergency vehicle or public safety vehicle is responding to an emergency call, is equipped with and displaying at least one flashing, rotating, or oscillating light visible under normal atmospheric conditions from a distance of five hundred feet to the front of the vehicle and if the driver of the vehicle is giving an audible signal by siren, exhaust whistle, or bell. This section does not relieve the driver of an emergency vehicle or public safety vehicle from the duty to drive with due regard for the safety of all persons and property upon the highway.

{¶2} In the instant case, it is undisputed Dutcher was traveling at approximately 60 m.p.h. in a 55-m.p.h. zone, which is within the Elm Valley operating guidelines.  It is undisputed Dutcher passed the vehicles in a legal passing zone. Dutcher and Luce testified the two vehicles immediately behind Bruce's vehicle slowed and pulled to the right as Dutcher approached them.  Bruce's vehicle also slowed and moved to the right.

{¶3} The trial court found Dutcher's decision to pass all three vehicles was undertaken with the good-faith belief he was not placing these three vehicles and the occupants in any unnecessary risk of physical harm, and we agree. See, *Elsass v. Crockett*, 9th Dist. No. 22282, 2005-Ohio-2142; *Cunningham v. City of Akron*, 9th Dist. No. 22818, 2006-Ohio-518, citing *Semple v. Hope*, 15 Ohio St.3d 372, 474 N.E.2d 314 (1984).

{¶4} Dutcher testified his vehicle was equipped with an audible signal and at least 16 various lights which were in use as he responded to the Elm Valley dispatch on June 10, 2006. Luce testified he heard the siren as he left the graduation party upon the dispatch, and identified the siren as coming from Dutcher's vehicle. He observed Dutcher's vehicles with all of its lights activated. He corroborated that the first two vehicles responded to Dutcher's signals by slowing down and pulling off to the right side of the roadway to permit Dutcher to pass.

{¶5} As the trial court pointed out, appellant offered Stocker's testimony to dispute the testimony of Dutcher and Luce, but Stocker was not in a position to see the vehicles prior to the collision. His testimony was not definitive and does not create a dispute of material fact.

{¶6} In conclusion, we find appellant has not stated any operative facts establishing an exception to statutory immunity. Moreover, while the question of whether Dutcher acted with willful and wanton disregard is generally a question for the jury, we must concur with the trial court that viewing the evidence in a light most favorable to appellant, there is simply no evidence Dutcher operated his vehicle

without lights or siren in operation; nor is there evidence Dutcher violated Elm Valley's policies and guidelines or applicable traffic statutes.

{¶7} Appellant's sole assignment of error is therefore overruled and the judgment of the Delaware County Court of Common Pleas is affirmed.

By: Delaney, P.J.

Gwin, J. and

Wise, J. concur.

HON. PATRICIA A. DELANEY

HON. W. SCOTT GWIN

HON. JOHN W. WISE

PAD:kgb

[Cite as *Mashburn v. Dutcher*, 2012-Ohio-6283.]

IN THE COURT OF APPEALS FOR DELAWARE COUNTY, OHIO

FIFTH APPELLATE DISTRICT

JOHN B. MASHBURN, ADM.      :
           :
           :
      Plaintiff-Appellant      :
           :
-vs-           :      JUDGMENT ENTRY
           :
JEFFREY D. DUTCHER, et al.      :
           :
           :      Case No. 12 CAE-01-0003
      Defendants-Appellees      :

For the reasons stated in our accompanying Opinion on file, the judgment of the Delaware County Court of Common Pleas is affirmed.  Costs assessed to Appellant.

_____
HON. PATRICIA A. DELANEY

_____
HON. W. SCOTT GWIN

_____
HON. JOHN W. WISE