[Cite as *Anderson v. Massillon*, 2014-Ohio-2516.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| ANDERSON, ADM. | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee/Cross-Appellant | : | Hon. William B. Hoffman, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 2013CA00144 |
| | : | |
| CITY OF MASSILLON, ET AL. | : | |
| | : | |
| | : | |
| Defendants-Appellants/Cross- | : | O P I N I O N |
| Appellees | : | |

CHARACTER OF PROCEEDING:      Appeal from the Stark County Court of
                             Common Pleas, Case No.
                             2009CV03641

JUDGMENT:                    AFFIRMED IN PART; REVERSED AND
                             REMANDED IN PART

DATE OF JUDGMENT ENTRY:      June 9, 2014

APPEARANCES:

For Plaintiff-Appellee/Cross-Appellant:      For Defendants-Appellants/Cross-
                                             Appellees:

LEE E. PLAKAS
DAVID L. DINGWELL                            GREGORY A. BECK
JAMES G. MANNOS                              MEL L. LUTE, JR.
EDMOND J. MACK                               JAMES F. MATHEWS
220 Market Ave. South, 8th Floor             400 South Main St.
Canton, OH 44702                             North Canton, OH 44720

DAVID G. UTLEY
One Cascade Plaza, Suite 800
Akron, OH 44308

*Delaney, J.*

{¶1} Plaintiff-Appellee/Cross-Appellant Cynthia Anderson, Administratrix of the Estates of Ronald E. Anderson and Javarre J. Tate and Defendants-Appellants/Cross-Appellees City of Massillon, Susan J. Toles, and Rick H. Annen appeal the July 15, 2013 judgment entry of the Stark County Court of Common Pleas. For the reasons that follow, we affirm in part and reverse and remand in part the judgment of the trial court.

## FACTS AND PROCEDURAL HISTORY

{¶2} At 8:30 a.m. on May 6, 2008, Tammy Lockey called 9-1-1 to report a car fire at 1272 Huron Road in Massillon, Ohio. The call was received by the RED Center, the central dispatch for the City of Massillon and other political subdivisions. Dispatcher Lynne Martin Joiner received the call. Joiner routed the call to Thomas Thornberry, the fire dispatcher. Thornberry consulted his computer to dispatch the first available fire engine in Massillon. Thornberry also inquired of Joiner whether the fire was near a house.

{¶3} At 8:31 a.m., a tone was sounded in Station 1 of the Massillon Fire Department for Engine 214, a pumper truck, to respond to the car fire. Rescue 250, approximately the size of an ambulance and that holds certain rescue equipment, was also ordered to respond to the car fire. Joiner called Lockey back and inquired whether the car fire was near a house. Lockey stated the car fire was near a house and Joiner relayed the information to Thornberry. Thornberry then toned Station 1 at 8:33:03 a.m. and dispatched the second engine, Engine 211, a 75-foot aerial ladder truck, instead of Rescue 250.

{¶4} At 8:33:43 a.m., Engine 214 left Station 1. Engine 214 was driven by Firefighter Greenwood and commanded by Captain Smith. Engine 214 proceeded down Erie Street to Walnut Street towards the dispatched location. Engine 214 traveled with its lights and sirens activated.

{¶5} Captain Rick Annen, the shift commander, directed Rescue 250 to remain at Station 1 because Engine 211 would instead respond to the car fire. Firefighters Jason Castile and Ernie Bard sat in the rear-facing passenger seats of Engine 211. Captain Annen commanded Engine 211 and sat in the commander's seat on the right passenger side of Engine 211. Firefighter Susan Toles drove Engine 211. At 8:34:25 a.m., Engine 211 left Station 1 and followed the same route to the dispatched location as Engine 214.

{¶6} As commander, some of Captain Annen's responsibilities while reporting to an emergency call are to consult a map book and to operate the siren and air horn. On May 6, 2008, when Captain Annen first got into Engine 211 he turned on the emergency lights and electronic siren that made a high and low pitch. He operated the air horn manually by a foot pedal. Captain Annen sounded the air horn at intersections. While in transit to the emergency call, Captain Annen referred to the map book he was holding.

{¶7} In order to respond to the car fire location, Engine 214 and Engine 211 traveled on Walnut Street. Walnut Street is a narrow, two-lane street traveling east and west in a residential area. It has a speed limit of 25 miles per hour. Walnut Street intersects with Johnson Street. Johnson Street travels north and south. The intersection of Walnut Street and Johnson Street is a three-way stop controlled by stop signs and an

overhead flashing red light. On the westbound side of Walnut Street, almost directly across from Johnson Street, is the driveway to a school. On May 6, 2008, a tree, utility pole, bushes, parked cars, and a house close to the street partially obstructed the view of the traffic approaching from Johnson Street to Walnut Street.

{¶8}   When Engine 211 turned eastbound on to Walnut Street, Captain Annen could not see Engine 214 ahead of them. Firefighter Toles stated she could see Engine 214 ahead of them.

{¶9}   Firefighter Greenwood, the driver of Engine 214, slowed down at Johnson Street to ensure that the intersection was clear of traffic before proceeding through it. At that time, Deanna Jackson was stopped on Beckman Street waiting to turn northbound onto Johnson Street. Jackson saw the first fire truck pass on Walnut Street while she was waiting to turn onto Johnson Street. Jackson saw Ronald Anderson driving northbound on Johnson Street. Ronald Anderson was driving his grandson Javarre Tate to the school located on Walnut Street. Anderson waved to Jackson and she pulled onto Johnson Street behind Anderson's vehicle. Jackson stated Anderson was stopped at the stop sign at Johnson and Walnut Street.

{¶10} As Firefighter Toles drove Engine 211 on Walnut Street, she observed a school bus pulled to the eastbound side of the road, yielding to the fire truck. Toles slowed down to make sure there were no children on the street and that the school bus stop sign was not out. Toles stated that after she determined the school bus was yielding, she moved left of center because of the presence of a parked car and school bus on eastbound side of Walnut Street.

{¶11} Engine 211 approached the Johnson Street intersection traveling at a speed exceeding 25 miles per hour. Toles stated that she scanned the intersection of Johnson and Walnut Street to make sure the intersection was clear and she determined no one was in the intersection.

{¶12} Jackson stated she heard sirens while she was on Johnson Street but she did not see a second fire truck. Jackson said she saw Anderson drive into the intersection. She then witnessed Engine 211 drive on the left side of the street and strike the center of Anderson's minivan. Captain Annen stated he saw Ronald Anderson's minivan slowly roll through the stop sign at Johnson Street to cross Walnut Street. He yelled to Toles, "He's not stopping!" Toles stated that as she approached the intersection, she saw the minivan "shoot out in front" of Engine 211. She did not apply the brakes because of the jake brake system on Engine 211, but maneuvered the truck to the left to avoid hitting the minivan and get around. Engine 211 collided with the minivan, resulting in the deaths of Ronald Anderson and Javarre Tate.

{¶13} Ohio State Highway Patrol Trooper Frederick J. Cook assisted in the investigation of the accident. In his reconstruction report, he calculated that Engine 211 had been traveling between 44 and 50 miles per hour. Trooper Cook also opined that given the decreased range of visibility caused by obstructions near the intersection, a driver stopped at the stop sign on Johnson Street might not have been able to see the fire truck approaching.

{¶14} Plaintiff-Appellee/Cross-Appellant Cynthia Anderson filed a wrongful-death action alleging that the City of Massillon, Toles, and Annen had willfully, wantonly, and recklessly caused the deaths of her husband and grandson.

{¶15} Anderson's expert, Choya R. Hawn, calculated the fire truck's minimum speed at the point of impact was between 49 and 52 miles per hour. He opined that because of roadside obstructions, Engine 211 was not visible to Ronald Anderson at the time he entered the intersection. Hawn also stated that he believed emergency vehicles approaching a stop sign should proceed at 10 miles per hour or slower to ensure the ability to stop. He further noted the danger of emergency vehicles running in tandem because the siren of the first vehicle could have masked the siren of the second, preventing Ronald Anderson from noticing the approaching fire truck.

{¶16} Scott A. Noll, an accident reconstructionist testifying for the City of Massillon and the firefighters, concluded that Engine 211 was traveling at 39 miles per hour and Toles had allowed adequate time and distance to evaluate the lanes of travel before proceeding through the intersection. Noll further opined that Anderson caused the accident by failing to stop at the stop sign.

{¶17} The City of Massillon, Toles, and Annen moved for summary judgment. The trial court granted summary judgment in their favor, finding the City of Massillon had a full defense to liability pursuant to R.C. 2744.02(B)(1)(b), because Engine 211 was responding to an emergency call and the operation of the fire truck did not constitute willful or wanton misconduct. The trial court further found the firefighters were entitled to immunity pursuant to R.C. 2744.03(A)(6)(b) because Anderson failed to present any evidence that the firefighters had acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

{¶18} Anderson appealed the trial court's judgment entry to this court. In *Anderson v. Massillon*, 193 Ohio App.3d 297, 2011-Ohio-1328, 951 N.E.2d 1063 (5th

Dist.) ("*Anderson I*"), we reversed the judgment of the trial court. We held there was a genuine issue of material fact whether the actions of Toles and Annen were reckless under R.C. 2744.03(A)(6)(b). *Id.* at ¶ 73. We also held that the wanton and reckless misconduct standard set forth in R.C. 2744.03(A)(6) and the willful and wanton misconduct standard set forth in R.C. 2744.02(B)(1)(b) were functionally equivalent. *Id.* at ¶ 46. We determined the City of Massillon and the firefighters were not immune if the firefighters had acted recklessly in causing the collision. *Id.* at ¶ 73.

{¶19} The City of Massillon, Toles, and Annen appealed to the Ohio Supreme Court. They argued the terms "willfully," "wanton," and "reckless" were not interchangeable but described different degrees of care. The question accepted for appeal by the Supreme Court was: "whether the standard in R.C. 2744.02(B)(1)(b), which affords a full defense to liability to a political subdivision unless the operation of a fire-department vehicle constitutes willful or wanton misconduct, is equivalent to the standard in R.C. 2744.03(A)(6)(b), which grants immunity to employees of political subdivisions unless their acts or omissions were committed in a wanton or reckless manner." *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, ¶ 18.

{¶20} In *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266 ("*Anderson II*"), the Supreme Court held that "willful," "wanton," and "reckless" describe different and distinct degrees of care and are not interchangeable. *Id.* at paragraph one of syllabus. The Court then clarified the respective standards. The Court remanded the case to the trial court for further proceedings to determine,

pursuant to the clarification of the terms, whether the City of Massillon had a full defense to liability and whether the firefighters were entitled to immunity. *Id.* at ¶ 3.

{¶21} The City of Massillon, Toles, and Annen filed a second motion for summary judgment and Anderson responded. On July 15, 2013, the trial court found the City of Massillon was immune from liability pursuant to R.C. 2744.02(B)(1)(b) because reasonable minds could only conclude that the actions of Toles and Annen on May 6, 2008 were not willful or wanton. Under R.C. 2744.03(A)(6), the trial court found there was a genuine issue of material fact whether the actions of Toles and Annen were reckless; therefore, the firefighters were not entitled to immunity from liability as a matter of law.

{¶22} It is from this decision the City of Massillon, Toles, and Annen now appeal. For ease of discussion, the City of Massillon, Toles, and Annen will be referred to at times as "Massillon."

### ASSIGNMENTS OF ERROR

{¶23} Massillon raises three Assignments of Error:

{¶24} "I. THE TRIAL COURT ERRED WHEN IT DENIED SUMMARY JUDGMENT IN FAVOR OF THE APPELLANTS TOLES AND ANNEN, THEREBY DENYING THE EMERGENCY PERSONNEL THE BENEFIT OF IMMUNITY IN THE FORM OF A 'FULL DEFENSE' PROVIDED BY LAW.

{¶25} "II. THE TRIAL COURT ERRED WHEN IT DENIED SUMMARY JUDGMENT IN FAVOR OF THE APPELLANTS TOLES AND ANNEN, AFFECTING AND UNDERMINING THE IMMUNITY FROM LIABILITY IN THE FORM OF A 'FULL DEFENSE' EXTENDED TO APPELLANT MASSILLON BY OPERATION OF LAW.

{¶26} "III. THE TRIAL COURT ERRED WHEN IT OVERRULED THE MOTION FOR SUMMARY JUDGMENT IN FAVOR OF THE APPELLANTS TOLES AND ANNEN, THEREBY DENYING THE EMERGENCY PERSONNEL THE BENEFIT OF IMMUNITY UNDER THE STANDARD OF R.C. 2744.03(A)(6)(b)."

## CROSS-ASSIGNMENT OF ERROR

{¶27} Anderson raises one Cross-Assignment of Error:

{¶28} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT TO CROSS-APPELLEE CITY OF MASSILLON.

## ANALYSIS

### Summary Judgment Standard of Review

{¶29} The Assignments of Error of Massillon and Anderson concern the trial court's judgment entry granting in part and denying in part Massillon's motion for summary judgment. We refer to Civ.R. 56(C) in reviewing a motion for summary judgment which provides, in pertinent part:

> Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for

summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

{¶30} The moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court, which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. *Dresher v. Burt,* 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). The nonmoving party then has a reciprocal burden of specificity and cannot rest on the allegations or denials in the pleadings, but must set forth "specific facts" by the means listed in Civ.R. 56(C) showing that a "triable issue of fact" exists. *Mitseff v. Wheeler,* 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801 (1988).

{¶31} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. *Vahila v. Hall,* 77 Ohio St.3d 421, 429, 674 N.E.2d 1164 (1997), citing *Dresher v. Burt,* 75 Ohio St.3d 280, 662 N.E.2d 264 (1996).

## Immunity

{¶32} The issues presented in this case have been well developed through the appellate process. The issues are (1) whether the City of Massillon is entitled to the full defense to liability for a political subdivision and (2) whether Toles and Annen are granted immunity from suit as employees of a political subdivision. In order to determine the liability of the City of Massillon, Toles, and Annen, we conduct our analysis pursuant to the language of two statutes: R.C. 2744.02(B)(1) and R.C. 2744.03(A)(6). The relevant portions of those statutes set forth different degrees of care (willful, wanton and

reckless conduct) that can impose liability upon the political subdivision and/or the employee of the political subdivision.

{¶33} However, before we engage in our de novo review of the Civ.R. 56 evidence as to the issues presented and applicable statutes, we recite the facts that are not in dispute. The City of Massillon is a political subdivision. On May 6, 2008, Toles and Annen were employees of the City of Massillon Fire Department. On May 6, 2008, Toles and Annen were operating a motor vehicle while proceeding toward a place where a fire was in progress or was believed to be in progress and they were answering an emergency alarm.

R.C. 2744.02 – Governmental Immunity

{¶34} R.C. 2744.02 establishes governmental immunity for political subdivisions and their employees: "* * * [a] political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

{¶35} A three-tiered analysis is required to determine whether a political subdivision is immune from tort liability pursuant to R.C. 2744. *Green Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 556-557, 733 N.E.2d 1141 (2000); *Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, 955 N.E.2d 954, ¶13-15. The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental or a proprietary function. *Green Cty. Agricultural Society*, at 556-557, 733 N.E.2d 1141; R.C. 2744.02(A)(1). That immunity, however, is not absolute. R.C. 2744.02(B); *Carter v. Cleveland*, 83 Ohio St.3d 24, 697 N.E.2d 610 (1998). "The

second tier of the analysis requires a court to determine whether any of the five listed exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability." *Id.* "In cases involving the alleged negligent operation of a motor vehicle by an employee of a political subdivision, the second tier of the analysis includes consideration of whether the specific defenses of R.C. 2744.02(B)(1)(a) through (c) apply to negate the immunity exception of R.C. 2744.02(B)(1)." *Smith v. McBride*, 2011-Ohio-4674, ¶ 14 citing *Colbert v. Cleveland,* 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶ 8. "If any of the exceptions to immunity of R.C. 2744.02(B) do apply, and if no defense in that section applies to negate the liability of the political subdivision under that section, then the third tier of the analysis requires an assessment of whether any defenses in R.C. 2744.03 apply to reinstate immunity." *Id.* at ¶ 15 citing *Colbert* at ¶ 9.

<u>R.C. 2744.02(B)(1)(b) – Full Defense to Liability</u>

{¶36} The first statute relevant to the resolution of this case is R.C. 2744.02(B). R.C. 2744.02(B) addresses the liability of a political subdivision and the full defenses to liability for the operation of a motor vehicle by employees. It states:

(B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:

(1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation

of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority. The following are full defenses to that liability:

* * *

(b) A member of a municipal corporation fire department or any other firefighting agency was operating a motor vehicle while engaged in duty at a fire, proceeding toward a place where a fire is in progress or is believed to be in progress, or answering any other emergency alarm and the operation of the vehicle did not constitute willful or wanton misconduct;

* * *

R.C. 2744.03(A)(6)(b) – Employee Immunity

{¶37} The three-tiered analysis of liability applicable to a political subdivision as set forth above does not apply when determining whether an employee of a political subdivision will be liable for harm caused to an individual. *Mashburn v. Dutcher*, 5th Dist. Delaware No. 12 CAE 010003, 2012-Ohio-6283, -- N.E.2d --, ¶ 33 citing *Cramer v. Auglaize Acres*, 113 Ohio St.3d 266, 2007-Ohio-1946, 865 N.E.2d 9, ¶ 17. We review the next statute relevant to this case, R.C. 2744.03(A)(6), to determine the liability of an employee of a political subdivision. Pursuant to R.C. 2744.03(A)(6), an employee of a political subdivision is immune from liability unless: (a) the employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities or (b) the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner. An employee is immune from liability for negligent acts or omissions. *Anderson II, supra* at ¶ 23.

Degrees of Care

{¶38} The Ohio Supreme Court stated in *Anderson II* that the General Assembly set forth three different degrees of care in R.C. 2744.02(B)(1)(b) and 2744.03(A)(6)(b) to impose liability on a political subdivision or an employee of a political subdivision. *Anderson II, supra* at ¶ 23. The degrees of care found in the statutes are "willful," "wanton," and "reckless." The *Anderson II* court clarified that the terms "willful," "wanton," and "reckless" used in the statutes are not interchangeable and it set forth the following definitions:

> Willful misconduct implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury. *Tighe v. Diamond,* 149 Ohio St. at 527, 80 N.E.2d 122; *see also Black's Law Dictionary* 1630 (8th Ed.2004) (describing willful conduct as the voluntary or intentional violation or disregard of a known legal duty).

> Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result. *Hawkins,* 50 Ohio St.2d at 117–118, 363 N.E.2d 367; *see also Black's Law Dictionary* 1613–1614 (8th Ed.2004) (explaining that one acting in a wanton manner is aware of the risk of the conduct but is not trying to avoid it and is indifferent to whether harm results).

Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct. *Thompson,* 53 Ohio St.3d at 104–105, 559 N.E.2d 705, adopting 2 Restatement of the Law 2d, Torts, Section 500, at 587 (1965); *see also Black's Law Dictionary* 1298–1299 (8th Ed.2004) (explaining that reckless conduct is characterized by a substantial and unjustifiable risk of harm to others and a conscious disregard of or indifference to the *risk,* but the actor does not desire harm).

*Anderson II, supra* at ¶ 32-34.

{¶39} R.C. 2744.02(B)(1)(b) states that in order to negate the immunity of the political subdivision when its employee is operating a motor vehicle and responding to a fire emergency, the conduct of the employee when operating the motor vehicle must be *willful* or *wanton.* R.C. 2744.03(A)(6)(b) states that an employee of a political subdivision can be liable if the employee's acts or omissions were done in a *wanton* or *reckless* manner. The only overlap between the statutes is for acts committed in a *wanton* manner.

{¶40} The *Anderson II* court analyzed the basis for the different degrees of care:

In the foregoing statutes, the General Assembly set forth different degrees of care that impose liability on a political subdivision or on an employee of a political subdivision. The legislature expressly stated that a political subdivision has a full defense to liability when the conduct involved is not willful or wanton, and therefore if the conduct is only

reckless, the political subdivision has a full defense to liability. In addition, the legislature expressly removed immunity from employees of a political subdivision for wanton or reckless conduct in R.C. 2744.03(A)(6)(b). By implication, an employee is immune from liability for negligent acts or omissions.

* * *

When the General Assembly used the terms 'willful' or 'wanton' in R.C. 2744.02(B)(1)(b) to deny a full defense to liability for a political subdivision and the terms wanton or reckless in R.C. 2744.02(A)(6)(b) to remove immunity of an employee of the political subdivision, it intended different degrees of care.

*Anderson II, supra* at ¶ 23 and ¶ 36.

{¶41} Whether an actor's conduct was malicious, wanton, reckless, or in bad faith is generally a fact question for the jury to decide. *See Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 356, 639 N.E.2d 31 (1994). Utilizing the *Anderson II* definitions for wanton, willful, or reckless conduct, we conduct a de novo review of the Civ.R. 56 evidence to determine whether there are genuine issues of material fact as to the liability of the City of Massillon, Toles, and Annen under R.C. 2744.02(B)(1)(b) or R.C. 2744.03(A)(6)(b). Our previous analysis of the Civ.R. 56 evidence conducted under *Anderson I* as to these issues does not have relevance to our determination today because the *Anderson II* court found our use of the definitions of wanton, willful, and reckless was incorrect. Our analysis today utilizes the distinct degrees of care of R.C. 2744.02(B)(1)(b) and R.C. 2744.03(A)(6)(b) as promulgated by *Anderson II*.

**The Liability of the City of Massillon under R.C. 2744.02(B)(1)(b)**

{¶42} Under R.C. 2744.02(B)(1)(b), a political subdivision has a full defense to liability for the operation of a motor vehicle by its employees if the operation of the motor vehicle when responding to a fire emergency did not constitute willful or wanton misconduct. In its judgment entry granting summary judgment in favor of the City of Massillon, the trial court found there was no genuine issue of material fact that the City of Massillon was entitled to the full defense to liability under R.C. 2744.02(B)(1)(b). Anderson argues in her sole Cross-Assignment of Error that the trial court erred in finding the City of Massillon was entitled to the full defense to liability because reasonable minds could come to different conclusions as to whether Toles's and Annen's operation of Engine 211 on May 6, 2008 constituted wanton misconduct. We agree.

<u>The Meaning of Willful or Wanton Misconduct</u>

{¶43} The *Anderson II* court reaffirmed that willful and wanton misconduct describe two distinct legal standards. *See Mashburn v. Dutcher*, 5th Dist. Delaware No. 12 CAE 010003, 2012-Ohio-6283, -- N.E.2d --, ¶ 41 citing *Gardner v. Ohio Valley Region Sports Car Club of Am.,* 10th Dist. Franklin No. 01 AP–1280, 2002-Ohio-3556, at ¶ 11.

{¶44} "Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is a great probability that harm will result." *Anderson II, supra* at ¶ 33. Wanton misconduct has been likened to conduct that manifests a "disposition to perversity," but the Supreme Court abandoned "disposition to perversity" as an element of the definition of wanton misconduct in

*Hawkins v. Ivy*, 50 Ohio St.2d 114, 363 N.E.2d 367 (1977). *Anderson II, supra* at ¶ 28. "'[M]ere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor.'" *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 356, 639 N.E.2d 31 (1994), quoting *Roszman, supra*. *See Gardner v. Ohio Valley Region Sports Car Club of Am.*, 10th Dist. No. 01 AP–1280, 2002-Ohio-3556, at ¶ 13. "[I]t must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be conscious, from his knowledge of such surrounding circumstances and existing conditions, that his conduct will in all common probability result in injury." *Anderson II, supra* at ¶ 25 citing *Universal Concrete Pipe Co. v. Bassett*, 130 Ohio St. 567, 200 N.E. 843 (1936), paragraph two of syllabus.

{¶45} "Willful conduct implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury." *Anderson II, supra* at ¶ 32. Willful misconduct involves "an intent, purpose, or design to injure." *Zivich v. Mentor Soccer Club, Inc.,* 82 Ohio St.3d 367, 375, 696 N.E.2d 201 (1998), quoting *McKinney v. Hartz & Restle Realtors, Inc.,* 31 Ohio St.3d 244, 246, 510 N.E.2d 386 (1987). Willful misconduct is something more than negligence and it imports a more positive mental condition prompting an act than wanton misconduct. *Phillips v. Dayton Power & Light Co.,* 93 Ohio App.3d 111, 119, 637 N.E.2d 963 (2nd Dist.1994), citing *Tighe v. Diamond,* 149 Ohio St. 520, 526–527, 80 N.E.2d 122 (1948). "Willful misconduct" involves a more positive mental state prompting the injurious act than wanton misconduct, but the intention relates to the

misconduct, not the result. *Mashburn v. Dutcher*, 5th Dist. No. 12 CAE 010003, 2012-Ohio-6283, ¶ 45.

{¶46} Both wanton and willful describes conduct that is greater than negligence and can be summarized as follows: willful conduct is the intent to harm someone and wanton misconduct is the failure to exercise any care whatsoever. *Anderson II, supra* at ¶ 48.

{¶47} In the present case, the alleged violations of local ordinances and departmental policies in the operation of Engine 211 on May 6, 2008 are relevant to, but not determinative of, the determination of willful, wanton, or reckless misconduct. The *Anderson II* court stated as to the consideration of the violation of statutes, ordinances, or departmental policies in determining whether there is willful or wanton conduct:

> [I]t is well established that the violation of a statute, ordinance, or departmental policy enacted for the safety of the public is not per se willful, wanton, or reckless conduct, but may be relevant to determining the culpability of a course of conduct.
>
> However, as the Restatement explains,
>
> In order that the breach of [a] statute constitute reckless disregard for the safety of those for whose protection it is enacted, the statute must not only be intentionally violated, but the precautions required must be such that their omission will be recognized as involving a high degree of probability that serious harm will result.
>
> Thus, as we concluded in *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, "[w]ithout evidence of an accompanying

knowledge that the violations 'will in all probability result in injury,' evidence that policies have been violated demonstrates negligence at best." *Id.* at 92.

(Citations omitted.) *Anderson II, supra* at ¶ 37-38.

## Was the Conduct of Toles and Annen Wanton?

{¶48} Anderson argues the totality of the evidence demonstrates there is a genuine issue of material fact as to whether the conduct of Toles and Annen demonstrated wanton misconduct. Anderson does not argue in her appellate brief that the conduct of Toles and Annen was willful and therefore, we will not address willful misconduct in relation to the facts presented. In support of Anderson's argument that the conduct of the firefighters was wanton, she directs the court to consider the physical circumstances of the scene where the accident occurred in relation to Toles's and Annen's conduct that consisted of alleged violations of local ordinances and departmental policies when responding to the emergency call. Anderson argues Toles's and Annen's actions when approaching the intersection at Johnson and Walnut Street demonstrated wanton misconduct.

{¶49} The determination of whether the conduct of Toles and Annen on May 6, 2008 was wanton is made considering the totality of the circumstances. *Anderson v. Massillon*, 193 Ohio App.3d 297, 2011-Ohio-1328, 951 N.E.2d 1063, ¶ 55. We also make our determination of whether there was wanton misconduct under the dictates of Civ.R. 56. We conduct a de novo review and consider the Civ.R. 56 evidence presented in a light most favorable to Anderson, the non-moving party, to determine whether there are genuine issues of material fact for trial.

{¶50} Anderson first points the court to the speed at which Toles approached and entered the Johnson and Walnut Street intersection. The speed limit on Walnut Street is 25 miles per hour. There is no dispute of fact that on May 6, 2008, Toles was operating Engine 211 at a speed in excess of 25 miles per hour. Ohio State Highway Patrol Trooper Frederick J. Cook assisted in the investigation of the accident. In his reconstruction report, he calculated that Engine 211 had been traveling at a minimum speed of 44 and 50 miles per hour. Anderson's expert, Choya R. Hawn, calculated the fire truck's minimum speed at the point of impact was between 49 and 52 miles per hour. Scott A. Noll, an accident reconstructionist testifying for Massillon, concluded that Engine 211 was traveling at 39 miles per hour.

{¶51} On May 6, 2008, the City of Massillon did not impose a specific limitation on its firefighters to operate its emergency vehicles a certain miles per hour over the posted speed limit when responding to an emergency. (Krause Depo., p. 50). Robert C. Krause, Anderson's expert testifying as to the operation of emergency vehicles, referred to the ASTM International, Standard Guide for Training Emergency Medical Services Ambulance Operations, Section 14.5.4.1, that stated, "under emergency response conditions, the speed shall not exceed that which is safe for road or environmental conditions. In no case shall the speed exceed 10 mph over the posted speed limit." Jason Castile, a City of Massillon firefighter in Engine 211 on May 6, 2008, testified that he felt "10 miles an hour over the speed limit is allowable when traveling in an emergency." (Castile Depo., p. 41). Castile thought that was a state policy. (Castile Depo., p. 42). Annen testified that he believed Toles was driving 35 to 40 miles per

hour. (Annen Depo., p. 99). He did not feel her speed was excessive and was within a safe parameter. (Annen Depo., p 101).

{¶52} Anderson next argues the court should consider Toles's speed when driving Engine 211 in relation to the physical circumstances of the scene of the accident. The intersection of Johnson and Walnut Street is a four-way stop, marked by stop signs and an overhead flashing red light. Toles did not stop Engine 211 when she crossed through the intersection. Massillon Ordinance 331.20(a) states, "[t]he driver of any emergency vehicle or public safety vehicle, when responding to an emergency call, upon approaching a red or stop signal or any stop sign shall slow down as necessary for safety to traffic, but may proceed cautiously past such red or stop sign or signal with due regard for the safety of all persons using the street or highway."

{¶53} Massillon Ordinance 331.20(a) authorized Toles and Annen to proceed through a stop sign without stopping under certain conditions when responding to an emergency call. Anderson argues, however, the Johnson and Walnut intersection is a blind intersection, which required Toles to apply the brakes and/or stop at the intersection. Massillon Fire Department Standard Operating Procedures §307.03, effective July 27, 2007, is entitled "Driver Responsibility" and states:

A. The driver of any Massillon Fire Department vehicle shall be directly responsible for the sage and prudent operation of the vehicle.

B. The driver's first priority shall be the safe arrival of the emergency vehicle at the emergency scene.

* * *

D. During emergency response, the driver shall bring the vehicle to a complete stop for any of the following:

–when so directed by a law enforcement official

–blind intersections

–when the driver cannot account for all lane of traffic in an intersection

–when other intersection hazards are present

–when encountering a stopped school bus with flashing warning lights

{¶54} On May 6, 2008, a tree, utility pole, bushes, parked cars, and a house close to the street partially obstructed the view of the traffic approaching from Johnson Street to Walnut Street. Choya R. Hawn, Anderson's accident reconstructionist, opined that "[t]he buildings, fence, utility poles, bushes, and trees in the southwest quadrant of the intersection of Walnut Street SE and Johnson Street SE created a fixed object view obstruction which limited the line of sight (West) from the stop sign at Johnson Street to 323 feet (for both drivers)." Scott A. Noll, accident reconstructionist for Massillon, stated in his expert report the "sight distance was limited due to various trees, bushes, and a residential structure located on the south side of Walnut Street."

{¶55} Toles stated that she scanned the intersection of Johnson and Walnut Street to make sure the intersection was clear and she determined no one was in the intersection. Toles did not stop Engine 211 at the intersection. While Engine 211 has jake brakes that activate when the foot is taken off the accelerator, Toles did not recall taking her foot off the accelerator when she entered the intersection. Annen stated he

saw Ronald Anderson's minivan slowly roll through the stop sign at Johnson Street to cross Walnut Street. Annen yelled to Toles, "He's not stopping!" Toles stated that as she approached the intersection, she saw the minivan "shoot out in front" of Engine 211. Daniel Clark, a witness to the accident, stated in his affidavit submitted in support of Anderson's response to the motion for summary judgment: "[t]he fire truck did not slow before entering the intersection and I heard no sound of it braking or skidding."

{¶56} Anderson argues there is a genuine issue of material fact whether Annen's conduct as captain on May 6, 2008 was wanton. Massillon Fire Department Standard Operating Procedures §307.04 details the "Officer's Responsibility:"

* * *

B. The Officer shall ensure that the driver is operating the vehicle in a safe and prudent manner at all times in accordance with department policy and state statutes.

C. The Officer shall issue warnings about road conditions and physical hazards to the driver when necessary.

D. The Officer shall be responsible to operate the radio, communications equipment, audible and visual warning devices.

E. The Officer shall assist the driver with intersection crossing, locating the scene, backing, and any other necessary safety practice.

{¶57} Anderson also argues there is a genuine issue of material fact that because of the speed of Engine 211, Engine 211's siren was masked by the siren of Engine 214 or that Engine 211 outran its siren so that Ronald Anderson did not hear Engine 211 approaching the intersection. Engine 211 was following Engine 214 down

Walnut Street at some distance apart. Toles testified that she received training that if two emergency vehicles were responding in tandem, there was a possibility that one siren could mask the other siren. (Toles Depo., p. 103). She was not aware if Engine 211 and Engine 214 were using different styles of siren wails on May 6, 2008. (Toles Depo., p. 104). Toles testified that she was also trained on the effect of speed on the siren's ability to warn motorists. (Toles Depo., p. 105). She stated that at certain speeds, the siren might not be as loud. Toles stated that with a larger vehicle such as Engine 211, the siren might become ineffective at 45 to 50 miles per hour. (Toles Depo., p. 106). Annen testified he agreed that a fire truck could outrun its siren. (Annen Depo., p. 119). Annen stated he did not have a specific recollection, but as they entered the intersection, he was probably pressing both the Q (a type of siren) and the air horn because that is generally what he did. (Annen Depo., p. 116). Daniel Clark, a witness to the accident, testified in his affidavit that he never heard an air horn when Engine 211 approached or reached the intersection.

{¶58} Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result. *Anderson II, supra* at ¶ 33. Under Civ.R. 56, we review the facts presented in a light most favorable to the non-moving party to determine whether there is a genuine issue of material fact that the conduct of Toles and Annen was wanton. Courts have consistently held that the line between willful, wanton, or reckless misconduct and ordinary negligence is a fine one, so that the "'the issue of whether conduct was willful or wanton should be submitted to the jury for consideration in light of the surrounding circumstances when reasonable minds might differ as to the import of

the evidence.'" *Hunter v. Columbus*, 139 Ohio App.3d 962, 970, 746 N.E.2d 246, 252 (10th Dist.2000); *Gilbert v. Cleveland*, 8th Dist. Cuyahoga No. 99708, 2013-Ohio-5252.

{¶59} Based on the facts presented in this case, we find there is a genuine issue of material fact whether the conduct of Toles and Annen on May 6, 2008 was wanton misconduct. Reasonable minds could come to differing conclusions as to whether Toles and Annen failed to exercise any care when Engine 211 entered the intersection of Johnson and Walnut Street. Toles's and Annen's alleged violations of local ordinances and departmental policies as to the operation of an emergency vehicle at an intersection with limited visibility does not demonstrate wanton misconduct per se, but the alleged violations are relevant in determining the culpability of a course of conduct and whether the violations would in all probability result in injury.

{¶60} R.C. 2744.02(B)(1)(b) affords political subdivisions a full defense to liability for injuries caused by the operation of a fire department vehicle responding to an emergency if the operation of the vehicle does not constitute willful or wanton misconduct. We find there is a genuine issue of material fact whether the operation of Engine 211 demonstrated wanton misconduct, thereby negating the City of Massillon's immunity from liability under R.C. 2744.02.

{¶61} Anderson's sole Cross-Assignment of Error is sustained.

### The Liability of Toles and Annen under R.C. 2744.03(A)(6)(b)

{¶62} R.C. 2744.03(A)(6)(b) provides immunity to political subdivision employees for acts or omissions not committed in a wanton or reckless manner. The trial court held there was a genuine issue of material fact whether the actions of Toles and Annen on May 6, 2008 were reckless. Massillon argues in its third Assignment of

Error the trial court erred in denying summary judgment as to Toles and Annen under R.C. 2744.03(A)(6)(b).  We disagree.

The Meaning of Wanton and Reckless Conduct

{¶63} We defined wanton misconduct under our analysis of R.C. 2744.02(B)(1)(b). As we noted, R.C. 2744.02(B)(1)(b) and R.C. 2744.03(A)(6)(b) are similar in that the statutes both list "wanton" misconduct as conduct that could cause the employee or political subdivision to be liable. Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result. *Anderson II, supra* at ¶ 33.

{¶64} The *Anderson II* court defined reckless misconduct:

Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct. *Thompson,* 53 Ohio St.3d at 104–105, 559 N.E.2d 705, adopting 2 Restatement of the Law 2d, Torts, Section 500, at 587 (1965); *see also Black's Law Dictionary* 1298–1299 (8th Ed.2004) (explaining that reckless conduct is characterized by a substantial and unjustifiable risk of harm to others and a conscious disregard of or indifference to the *risk,* but the actor does not desire harm).

*Anderson II, supra* at ¶34.

{¶65} The Restatement of Torts 2d defines "recklessness" as follows: "The actor's conduct is in reckless disregard of the safety of others if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having

reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." 2 Restatement of the Law 2d, Torts, Section 500 at 587 (1965). Comment *f* to Section 500 contrasts recklessness and intentional misconduct: "While an act to be reckless must be intended by the actor, the actor does not intend to cause the harm which results from it." *Id.* at 590. Comment *a* to Section 500 adds that " * * * the risk must itself be an unreasonable one under the circumstances." *Id.* at 588.

<u>Was the Conduct of Toles and Annen Wanton or Reckless?</u>

{¶66} We found under R.C. 2744.02(B)(1)(b) that reasonable minds could come to differing conclusions as to whether the conduct of Toles and Annen when entering the intersection of Walnut and Johnson Street demonstrated wanton misconduct. We therefore find, under R.C. 2744.03(A)(6)(b), there is likewise a genuine issue of material fact whether Toles and Annen demonstrated wanton misconduct on May 6, 2008.

{¶67} As to reckless misconduct, Anderson argues the facts that create a genuine issue of material fact as to wanton misconduct also support a finding there is a genuine issue of material fact whether the conduct of Toles and Annen when entering the intersection of Johnson and Walnut Street was reckless. We agree.

{¶68} We consider the totality of the circumstances when determining whether the conduct of Toles and Annen was reckless. We find that the speed at which Toles and Annen entered the intersection with at least limited visibility could demonstrate to a trier of fact there was a conscious disregard of or indifference to a known or obvious risk

of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct.

{¶69} There are genuine issues of material fact whether the acts or omissions of Toles and Annen on May 6, 2008 were wanton or reckless under R.C. 2744.03(A)(6)(b) so as to remove their immunity from suit as political subdivision employees.

{¶70} Massillon's third Assignment of Error is overruled.

**Application of the "Full Defense" to Political Subdivision Employees**

{¶71} Massillon argues in its first and second Assignments of Error that the "full defense" found in R.C. 2744.02(B)(1)(b) should apply to the political subdivision as well as the employees of the political subdivision. We disagree.

{¶72} R.C. 2744.07(A)(1) states:

[A] political subdivision shall provide for the defense of an employee, in any state or federal court, in any civil action or proceeding which contains an allegation for damages for injury, death, or loss to person or property caused by an act or omission of the employee in connection with a governmental or proprietary function. The political subdivision has the duty to defend the employee if the act or omission occurred while the employee was acting both in good faith and not manifestly outside the scope of employment or official responsibilities.

{¶73} R.C. 2744.07(A)(2) states:

[A] political subdivision shall indemnify and hold harmless an employee in the amount of any judgment, other than a judgment for punitive or exemplary damages, that is obtained against the employee in a state or

federal court or as a result of a law of a foreign jurisdiction and that is for

damages for injury, death, or loss to person or property caused by an act

or omission in connection with a governmental or proprietary function, if at

the time of the act or omission the employee was acting in good faith and

within the scope of employment or official responsibilities.

{¶74} Massillon argues that because R.C. 2744.07(A)(1) and R.C. 2744.07(A)(2) require the political subdivision to defend and indemnify the political subdivision employee, R.C. 2744.03(A)(6)(b) therefore defeats the purpose of the "full defense" provision of R.C. 2744.02(B)(1).

{¶75} In its summary judgment entry, the trial court considered the argument presented by Massillon and found it to be unpersuasive. We agree. As the trial court noted, the *Anderson II* court considered R.C. 2744.02(B)(1)(b), 2744.03(A)(6)(b), 2744.07(A)(1), and 2744.07(A)(2) in making its decision. Under R.C. 2744.02(B)(1)(b), the political subdivision is granted a full defense to liability unless the conduct of the political subdivision employee when operating a motor vehicle is willful or wanton. Under R.C. 2744.03(A)(6)(b), the political subdivision employee is granted immunity from suit unless the conduct is wanton or reckless. The *Anderson II* court held:

In the foregoing statutes, the General Assembly set forth different

degrees of care that impose liability on a political subdivision or on an

employee of a political subdivision. The legislature expressly stated that a

political subdivision has a full defense to liability when the conduct

involved is not willful or wanton, and therefore, if the conduct is only

reckless, the political subdivision has a full defense to liability. In addition,

the legislature expressly removed immunity from employees of a political subdivision for wanton or reckless conduct in R.C. 2744.03(A)(6)(b). By implication, an employee is immune from liability for negligent acts or omissions.

*Anderson II, supra* at ¶ 23. *Anderson II* held that the General Assembly intended different degrees of care for a political subdivision and its employees. *Anderson II, supra* at ¶ 36. By so holding, the *Anderson II* court interpreted the political subdivision immunity analysis under R.C. 2744.02(B)(1)(b) to be distinct from the employee immunity analysis under R.C. 2744.03(A)(6)(b). The *Anderson II* court considered R.C. 2744.07(A)(2) in its analysis and did not find a conflict between the statutes as to R.C. 2744.02(B)(1)(b) and 2744.03(A)(6)(b). R.C. 2744.07(A)(2) "requires the political subdivision to indemnify its employee if the employee is liable for a good faith act related to a governmental or proprietary function. Requiring the subdivision to indemnify its employee is entirely different from imposing direct liability on the subdivision." *Piro v. Franklin Twp.*, 102 Ohio App.3d 130, 141, 656 N.E.2d 1035, 1042 (9th Dist.1995).

{¶76} Massillon's first and second Assignments of Error are overruled.

## CONCLUSION

{¶77} Based on the foregoing, we overrule the first, second, and third Assignments of Error of the Defendants-Appellants/Cross-Appellees City of Massillon, Susan J. Toles, and Rick H. Annen. We sustain the sole Cross-Assignment of Error of Plaintiff-Appellee/Cross-Appellant Cynthia Anderson, Administratrix of the Estates of Ronald E. Anderson and Javarre J. Tate.

{¶78} The judgment of the Stark County Court of Common Pleas is affirmed in part and reversed and remanded in part for further proceedings consistent with this opinion and law.

By: Delaney, J.,

Gwin, P.J. and

Hoffman, J., concur.